**Harold M. BROWN and Helen M. Brown, Plaintiffs,**

v.

**Patricia Roberts HARRIS, Secretary of the Department of Housing and Urban Development, Defendant.**

**Civ. A. No. 78–10171.**

United States District Court, E. D. Michigan, N. D.

Feb. 13, 1979.

James H. Mathieu, Bower & Rogers, Midland, Mich., for plaintiffs.

James K. Robinson, U. S. Atty., E. D. Mich., Detroit, Mich., Peter C. Jensen, Asst. U. S. Atty., Bay City, Mich., for defendant.

MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

On December 26, 1976, plaintiffs commenced this action in the Circuit Court for the Circuit of Midland, Michigan against the National Flood Insurers Association for insurance proceeds paid to Jack T. Raines and Pamela M. Raines. On July 27, 1978, upon motion by the United States Attorney on behalf of Patricia Roberts Harris, Secretary of the Department of Housing and Urban Development, the Midland Circuit Court ordered Secretary Harris be substituted as a party defendant and dismissed defendant National Flood Insurers Association from the action. On August 25, 1978, the action was removed by defendant Harris to this Court pursuant to 42 U.S.C. § 4053 and 28 U.S.C. § 1444.

The matter is before the Court on defendant's motion for summary judgment pursuant to F.R.Civ.P. 56(b). Defendant relies upon a stipulated Statement of Facts submitted by plaintiff and the National Flood Insurers Association to the Midland Circuit Court upon which the state court could render its decision. Plaintiff has not challenged defendant's use of the stipulation nor has plaintiff refuted the truthfulness of the stipulated facts. Thus, the Court finds that there is no genuine issue as to any material fact and that the action is

ripe for summary judgment. F.R.Civ.P. 56(c).

The undisputed facts are that plaintiffs contracted with Jack T. Raines and Pamela M. Raines for the sale of a business known as Brownie's Food Market. The full agreement between plaintiffs and the purchasers was contained in a Security Agreement and in a Land Contract; both were dated April 12, 1973.

Both of these agreements contained reference to insurance which the Raineses as purchasers were required to provide for the benefit of plaintiffs as sellers. The Security Agreement which dealt with the sale of the personal property contained in the business, provides that:

"Debtor (Jack T. and Pamela M. Raines) shall insure said property against *fire, theft, and windstorm,* as well as *general liability,* and maintain such insurance as may be required by the secured party all of said insurance to be payable to secured party as his interest may appear. Policy shall be delivered to the secured party upon request." (Emphasis added)

There were no other references to insurance in the Security Agreement. The Land Contract which dealt with the sale of the real property, provided that:

"3. Said purchaser (Jack T. and Pamela M. Raines) shall . . . during the continuance of this contract, keep insured the buildings now on said premises or which shall hereafter be placed thereon in the name of said Seller against loss by *fire* and *windstorm,* in such company or companies and for such amount as the Seller shall approve, and forthwith deposit all policies of insurance with the Seller, with loss, if any, payable to the Seller, as his interest may appear under this contract . . ."

The Agreement further provided that: "Should the Purchaser fail . . . to keep said buildings insured, the Seller may pay the same and have the buildings insured and the amounts thus expended shall be a lien on said premises and may be added to the balance then unpaid hereon and be due at once and bear interest until paid at the rate of Seven (7%) per cent per annum."

The Land Contract contained no other provisions for insurance.

Subsequent to the execution of the Land Contract and the Security Agreement, Jack T. Raines and Pamela M. Raines, doing business as Brownie's Fine Foods, secured an insurance policy providing for flood loss benefits. The flood insurance policy was procured through the Bailey Insurance Agency of Midland, Michigan, was issued by the National Flood Insurers Association and named Jack T. Raines and Pamela M. Raines as payees.

On or about September 2, 1975, flood damage occurred to the real and personal property specified in the Land Contract and the Security Agreement. On April 20, 1976, the National Flood Insurers Association paid to the Raineses the sum of $8,148.68 as the total insured loss.

At a time prior to payment of the insurance proceeds, plaintiffs notified the Bailey Insurance Agency of their interest as evidenced by the Land Contract and the Security Agreement and of their right to the insurance proceeds. Thereafter, the Bailey Insurance Agency was informed by the National Flood Insurers Association, defendant's predecessor, that its liability was only to Jack T. Raines and Pamela M. Raines.

It is undisputed that, at the time the Land Contract and the Security Agreement were prepared, flood insurance was not available to plaintiffs.

Defendant contends that the flood insurance policy purchased by Jack T. and Pamela M. Raines was a personal contract between themselves and the National Flood Insurers Association and that plaintiffs as land contract vendors have no claim to the insurance proceeds. Defendant further contends that the Land Contract and Security Agreement must be strictly against its draftors and that said documents do not impose upon the Raineses an obligation to provide flood insurance for the benefit of plaintiffs.

In opposition, plaintiffs respond that they have an equitable lien on the proceeds and that defendant's predecessor erroneously disbursed the insurance proceeds to the Raineses with knowledge of their interest. Plaintiffs further request the Court to reform the flood insurance contract by naming plaintiffs the payees under the policy consistent with the original intent of the parties to fully insure plaintiffs from loss.

The Court finds that plaintiffs' position is without merit and concludes that defendant is entitled to summary judgment as a matter of law.

"In the absence of a provision in the purchase contract imposing upon him an obligation to insure for the benefit of the vendor, the purchaser will not be compelled to account for any part of the insurance proceeds collected by him on a policy taken out to protect his own interest, providing the vendor has no special equitable rights to the insurance funds." Annot. 64 A.L.R.2d 1402, 1414 (1959); see also *Couch on Insurance* 2d 29:102 p. 387 (1960).

The agreement between plaintiffs and the Raineses specifically provided that the purchasers would obtain fire, theft, windstorm and general liability insurance for the benefit of the vendor. The agreement is silent as to flood insurance, presumptively, because it was not available at the time the agreement was entered into. The Raineses, however, did procure flood insurance at a subsequent time to protect their own interests in the business. There is no evidence in the record to reflect an attempt by plaintiffs prior to the flood damage to either procure such insurance independently or to seek a revision of their agreement with the Raineses to include flood insurance. Equity can only aid the vigilant. *General Electric Co. v. Sciakly Bros. Inc.,* 304 F.2d 724 (CA6, 1962).

The Court finds that the flood insurance policy purchased by the Raineses and issued by defendant's predecessor was a personal contract between the insured and the insurance carrier and was not subject to an equitable lien as plaintiffs assert. Plaintiffs can assert no claim to insurance proceeds when the insurance is not effected for their benefit. Appleman, *Insurance Law and Practice,* § 3367; see also 14 *Michigan Law and Practice,* Insurance § 271, pp. 251–52.

For these reasons, defendant's motion for summary judgment is GRANTED and the Complaint is hereby DISMISSED.

IT IS SO ORDERED.